UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

KANG LU,

Plaintiff,

v.

EXECUTIVE OFFICE OF PUBLIC SAFETY
AND SECURITY (EOPSS); TERRENCE REIDY,
in his official capacity as Secretary of EOPSS;
OFFICE OF THE ATTORNEY GENERAL; and
ANDREA JOY CAMPBELL, in her official
capacity as Attorney General of Massachusetts,

Defendants.

CIVIL ACTION
NO. 1:23-cv-12045-AK

---

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

Angélica L. Durón
 (BBO# 705315)
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2367
Angelica.Duron@mass.gov

Dated: October 31, 2023

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 3

STATUTORY AND REGULATORY BACKGROUND............................................................. 3

FACTUAL BACKGROUND..................................................................................................... 5

ARGUMENT .............................................................................................................................. 6

    I.    *Younger* Abstention Compels Dismissal of This Case in Its Entirety. ........................... 6

    II.   Plaintiff's Claims Against EOPSS and the AGO Are Barred by the Eleventh
        Amendment.................................................................................................................... 10

    III.  Plaintiff's Complaint Fails to State a Claim and Is Therefore Subject to Dismissal
        Under Fed. R. Civ. P. 12(b)(6)....................................................................................... 11

CONCLUSION........................................................................................................................... 14

## INTRODUCTION

Defendants – the Executive Office of Public Safety and Security (EOPSS); Terrance Reidy, in his official capacity as Secretary of EOPSS ("Secretary Reidy"); the Office of the Attorney General ("AGO"); and Andrea Joy Campbell, in her official capacity as Attorney General of Massachusetts ("Attorney General") – hereby seek dismissal of the Complaint filed by the Plaintiff, Kang Lu, for three reasons.  First, the Court should dismiss the case under *Younger* abstention because Lu's action seeks to re-litigate a matter that is currently the subject of an ongoing state-court proceeding, *i.e.*, his appeal from his recent conviction of carrying a firearm without a license in violation of Mass. Gen. Laws. c. 269, § 10(a).  Second, the Eleventh Amendment bars Lu's suit against EOPSS and the AGO in this Court.  Third, Lu has failed to state a claim upon which relief can be granted, since the Supreme Court has stated, as recently as its decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"), that states may impose licensing requirements consistent with the Second Amendment.  *See id.* at 2138 n.9; *id.* at 2161-62 (Kavanaugh, J., joined by Roberts, C.J., concurring).  For these reasons, the Court should dismiss the Plaintiff's Complaint, with prejudice.[1]

## STATUTORY AND REGULATORY BACKGROUND

*Firearm Licensing*

Massachusetts General Laws Chapter 140, §§ 121-131Q regulate firearm possession and licensing in the Commonwealth.  The statute grants the "licensing authority," defined as "the

---

[1] Several other individuals have separately filed "Notices of Appearance" purporting to have joined this action, as well as "Affidavits and Assent to Action," assenting to and incorporating Plaintiff's Complaint.  *See* Dkt Nos. 11-23, 25-29.  None of these individuals have taken the appropriate steps to intervene as parties to this action, and all have failed to comply with Fed. R. Civ. P. 24, which governs intervention.  The Court should disregard these documents.  To the extent these "Notices" can be considered motions to intervene, the Court should deny them outright.

chief of police or the board or officer having control of the police in a city or town or persons authorized by them," and the colonel of the State Police with the power to issue licenses to carry firearms and firearm identification (FID) cards to residents of the Commonwealth.  Mass. G.L. c. 140, §§ 121, 129B, 129C, 131(d).

Absent certain exemptions, a person must have an FID card to "own or possess any firearm, rifle, shotgun or ammunition."  *Id.* § 129C.  An FID card allows a person to possess rifles and shotguns that are not "large capacity," as defined in Mass. G.L. c. 140, § 121, and to possess handguns within their home or place of business.  *See Powell v. Tompkins*, 783 F.3d 332, 337 (1st Cir. 2015); *Commonwealth v. Gouse*, 461 Mass. 787, 799 n.14 (2012); Mass. G.L. c. 140, §§ 129B(6), 129C.  A license to carry is a more expansive form of licensure than an FID card.  It entitles a person "to purchase, rent, lease, borrow, possess and carry" firearms, rifles, and shotguns, including large capacity firearms and weapons, and ammunition for all lawful purposes.  *Id.* § 131.  In other words, a holder of a license to carry may possess and carry firearms, rifles, or shotguns either openly or in a concealed manner, in their homes or in public. *Id.* § 131.

The licensing authority cannot issue FID cards or licenses to carry to those considered "prohibited persons" under the statute.  *See id.* §§ 129B(1), 131(d).  For example, those prohibited from obtaining a license to carry include people with felony convictions or misdemeanor convictions for crimes of domestic violence, people under 21 years old, and people who are currently the subject of an abuse prevention restraining order.  *Id.* § 131(d).  Any applicant or holder of an FID card or license to carry aggrieved by a denial, revocation, or suspension may file a petition to obtain judicial review in the state district court having

4

jurisdiction in the city or town wherein the applicant filed for or was issued an FID card or license to carry.  *Id.* §§ 129B(5), 131(f).

*Crimes for Violations of Firearm Licensing Laws*

To lawfully possess a gun in Massachusetts, a person generally must obtain either a license to carry or an FID card.  *See* Mass. G.L. c. 269, § 10(a).  General Laws c. 269, § 10(a), makes it a crime to knowingly possess a firearm outside of one's residence or place of business without having a license to carry a firearm issued under Mass. G.L. c. 140, § 131.  Chapter 269, § 10(h)(1), makes it a crime to own or possess a firearm, rifle, shotgun, or ammunition without having a firearm identification (FID) card pursuant to Mass. G.L. c. 140, § 129C.  Chapter 269, § 10(m), makes it a crime to knowingly possess a large capacity weapon without a license to carry firearms issued under Mass. G.L. c. 140, § 131 or § 131F.

## FACTUAL BACKGROUND

The Plaintiff, Kang Lu, challenges the Massachusetts statutory scheme regulating the licensure and the keeping and carrying of firearms—reflected in the state firearms licensing statute, Mass. G.L. c. 140, § 131, and the criminal prohibition on unlicensed possession of a firearm, Mass. G.L. c. 269, § 10—on state and federal constitutional grounds.  Complaint ("Compl."), ¶¶ 1, 6-7, 10, IX.  More specifically, Plaintiff asserts that Massachusetts cannot, consistent with the Second Amendment, require him to obtain a license to carry a firearm under Mass. G.L. c. 140, § 131, and seeks declaratory judgment aimed at preventing the

Commonwealth from prosecuting him in the future for unlicensed possession of firearms under

Mass. G.L. c. 269, § 10.  Compl. ¶¶ 5-10.

## ARGUMENT

### I.    *Younger* Abstention Compels Dismissal of This Case in Its Entirety.

Plaintiff's action for declaratory judgment in this Court is merely a collateral attack on

his recent firearm-related convictions in state court, which are now on appeal,[2] and can be

dismissed under the doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), which calls

on federal courts to refrain from exercising their jurisdiction when there is already underway a

parallel, pending state criminal proceeding.  *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 72

(2013).  Although Plaintiff's Complaint makes no mention of those convictions, this suit directly

challenges the Massachusetts licensing laws regarding possession of firearms under which he

was convicted, Mass. G.L. c. 269, § 10, for carrying a firearm without a license to carry as

required by Mass. G.L. c. 140, § 131.  *See* Compl. ¶¶ 6-7, VIII(a); *infra* note 3.  Plaintiff's

suggestion that *Younger* does not apply because there are no ongoing state court proceedings, *see*

Compl. ¶ 9, is inconsistent with cases examining *Younger*'s application to judgments on appeal

in state court.  *See Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 34-35 (1st Cir. 2004)

(explaining that, under *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), a "[state court] proceeding

is 'ongoing' for *Younger* purposes until the state appellate process [is] complete."); *New Orleans*

*Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) ("For *Younger*

---

[2] On June 29, 2023, Plaintiff was found guilty of carrying a firearm without a license and possessing ammunition without a firearms identification card in violation of Mass. G.L. c. 269, § 10(a) and 10(h).  *Commonwealth v. Lu*, No. 2179CR00067 (Hampden Super. Ct.).  During Lu's state-court criminal proceeding, he filed a motion to dismiss the indictment on the ground that he could not be prosecuted for unlicensed possession of a firearm consistent with the Second Amendment.  *See id.*, Dkt. File Ref. Nos. 24-25.  After he was convicted, Lu filed a notice of appeal on August 29, 2023.  *Id.*, Dkt. File Ref. No. 111.

purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal

court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect

for the State as sovereign."); *see also Bey v. Commonwealth of Massachusetts*, No. CV 21-

10409-ADB, 2021 WL 1990019, at *2 (D. Mass. Apr. 30, 2021) (finding that *Younger* abstention

applied to plaintiff's habeas petition irrespective of whether he was being prosecuted or had

already been convicted because "the Court has no reason to believe that [plaintiff] will not have

an opportunity to raise all pertinent issues within the state court system, whether in front of the

trial court or on appeal"); *Dones-Arroyo v. Trias-Monge*, 430 F. Supp. 315, 317 (D.P.R. 1976)

(rejecting plaintiff's argument that *Younger*'s application to "pending state criminal

prosecutions" did not include the appellate stage).  Nor can Plaintiff evade *Younger*'s application

by omitting information about his prosecution for gun-related charges, which he sought to enjoin

on the same constitutional grounds put forth here, and of which he was ultimately convicted.[3]

All of the other conditions for *Younger* abstention to apply are met here.  As the First

Circuit has explained:

> We distill from *Sprint* a three-step approach to *Younger* abstention.  To begin, a
> federal court must ascertain whether a particular state proceeding falls within the
> *Younger* taxonomy.  If so, the court must then take the second step and consider
> whether the *Middlesex* factors support abstention.  And if these two steps leave
> the case on track for abstention, the court must take the third step and determine
> whether any of the isthmian exceptions to the *Younger* doctrine apply.

---

[3] Plaintiff sought to halt his then-ongoing criminal prosecution by filing a similar action for
declaratory and injunctive relief in state court.  *See Lu v. Campbell*, Suffolk Super. Ct., No.
2284CV02125, Dkt. File Ref. No. 2.  There, the Court dismissed Plaintiff's complaint finding
that "Plaintiffs contention that his right to carry a firearm overrides and invalidates the state's
licensing requirements, as applied to him, are properly made in the appeal of his criminal
conviction" and noting that "[i]f he is successful with that argument then his criminal conviction
would need to be vacated because his possession of a gun and ammunition was not in violation
of the state statute." *Id.*, Dkt. File Ref. No. 29.

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192-93 (1st Cir. 2015).  At the first step, "the particular state proceeding" at issue here—a criminal prosecution—falls squarely within the "*Younger* taxonomy."  *Id.*  Indeed, the *Younger* abstention doctrine originated precisely to require federal courts to abstain from adjudicating disputes that interfered with ongoing state-court *criminal* prosecutions.  The state-court proceeding at issue here thus falls within the core of the doctrine, and as noted above, the fact that Lu's conviction is currently on appeal in the Massachusetts appellate courts does not change that result.

At the second step, the three factors from *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), all support abstention here.  *See Sirva*, 794 F.3d at 192-93.  First, the state-court litigation is ongoing, for the reasons stated above.  Second, the state courts of Massachusetts have a strong interest in managing and resolving the prosecution of state crimes.  *See Middlesex*, 457 U.S. at 432 (whether the state-court proceedings "implicate important state interests" is relevant to *Younger* abstention); *Rivera-Schatz v. Rodriguez*, 310 F. Supp. 2d 405, 410 (D.P.R. 2004) (finding that second *Middlesex* factor was met where plaintiff was currently being prosecuted "since the state has a legitimate interest in enforcing its laws against those citizens who allegedly engage in conduct defined as punishable under its statutes").  Here again, the fact that state-court criminal proceedings were the original core of the *Younger* abstention doctrine demonstrates that such proceedings implicate "important state interests." *Middlesex*, 457 U.S. at 432.  Third, Lu's state-court criminal case provides an adequate forum for Lu to raise any of the claims he raises here, including his federal constitutional claim.  *See id.* (whether there is an "adequate opportunity in the state proceedings to raise constitutional challenges" is relevant to *Younger* analysis).  Massachusetts courts routinely adjudicate constitutional claims—including Second Amendment claims—as part of criminal prosecutions.

*See, e.g.*, *Commonwealth v. Guardado*, 491 Mass. 666, 689-94 (2023) (vacating convictions for unlicensed possession of a firearm and ammunition and holding that, after *Bruen*, government must prove beyond a reasonable doubt, as an element of the offense, that defendant did not have a license to carry). Indeed, here Plaintiff filed a motion to dismiss the indictment in his criminal case, on the ground that his prosecution for unlicensed possession of a firearm violated the Second Amendment. *Commonwealth v. Lu*, No. 2179CR00067 (Hampden Super. Ct.), Dkt. File Ref. Nos. 24-25. Lu will be able to raise the Second Amendment issue as part of the appeal of his criminal conviction. This factor supports abstention. *See Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 262 (1st Cir. 1993) ("Except in the most extraordinary cases, a federal court must presume that state courts . . . are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties."); *Johnson v. Bd. of Bar Overseers of Mass.*, 324 F. Supp. 2d 276, 283 (D. Mass. 2004) ("[I]t cannot be doubted that the courts of the Commonwealth . . . will give federal constitutional issues . . . the closest scrutiny.").

At the third step, none of the "isthmian exceptions" to *Younger* apply here. *Sirva*, 794 F.3d at 192-93. The exceptions to *Younger* abstention are limited and apply only in "unusual" circumstances, such as when the state-court proceeding is brought "for the purpose of harassment" or where the state forum "provides inadequate protection of federal rights" or where a state statute is "flagrantly and patently violative of express constitutional prohibitions." *Id.* at 192 (citations omitted). None of these exceptions applies here. The criminal case was brought not to harass Lu, but because there was probable cause to believe he had engaged in unlicensed possession of firearms in violation of Mass. G.L. c. 269, § 10—a point later confirmed when he was convicted. Also, there is no reason to believe that the state trial and appellate courts will provide inadequate protection for Lu's federal rights; he is free to raise his Second Amendment

challenge in the state courts.  Finally, although Lu may claim that the Massachusetts firearms licensing statute is "flagrantly" unconstitutional, as explained below, he is simply wrong about this point, as confirmed by the Supreme Court in its decision in *Bruen*.  *See infra* pp. 11-13.

Because all of the factors supporting *Younger* abstention apply here, and none of the exceptions to abstention apply, this Court should dismiss the Complaint, with prejudice.  *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005) ("*Younger* abstention is mandatory if its conditions are met.").

## II.    Plaintiff's Claims Against EOPSS and the AGO Are Barred by the Eleventh Amendment.

The Court should also dismiss Lu's claims against EOPSS and the AGO. The Eleventh Amendment forbids federal courts from exercising jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States" in the absence of the State's consent. U.S. Const. amend. 11.  The Amendment's "ultimate guarantee" is "that nonconsenting States may not be sued by private individuals in federal court."  *Board of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies equally to any agency or department of the State, regardless of the nature of the relief sought.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011) (affirming dismissal of complaint based on "straightforward" application of Eleventh Amendment, where complaint named only state agency as defendant).  Because EOPSS and the AGO have not waived their Eleventh Amendment immunity in this case, and their immunity has not been abrogated by Congress, Lu's claims against the state agencies themselves must be dismissed.  *See Brait Builders*, 644 F.3d at 11 (where state agency had not waived its immunity

and immunity had not been abrogated by Congress, it was "perfectly clear" that plaintiff's claims

against state agency were barred by the Eleventh Amendment).

### III.   Plaintiff's Complaint Fails to State a Claim and Is Therefore Subject to Dismissal Under Fed. R. Civ. P. 12(b)(6).

Plaintiff's Complaint is also subject to dismissal under Fed. R. Civ. P. 12(b)(6) because

Lu fails to state a claim that the Massachusetts's firearm licensing statute is unconstitutional

under the Second Amendment.  The three central Supreme Court cases addressing Second

Amendment challenges to modern state firearm licensing schemes—*Heller*, *McDonald*, and

*Bruen*—do not support Lu's contention that the Commonwealth cannot regulate his use or

possession of a firearm or weapon for his personal use.[4]  *See Heller*, 554 U.S. at 626; *McDonald*

*v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 142 S. Ct. at 2161-62 (Kavanaugh, J.,

concurring).  The Court in *Heller* clearly set forth the ability of states to regulate the use and

possession of firearms:

> Like most rights, the right secured by the Second Amendment is not unlimited.
> From Blackstone through the 19th-century cases, commentators and courts
> routinely explained that the right was not a right to keep and carry any weapon
> whatsoever in any manner whatsoever and for whatever purpose.  For example,
> the majority of the 19th-century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the Second
> Amendment or state analogues.  Although we do not undertake an exhaustive
> historical analysis today of the full scope of the Second Amendment, nothing in
> our opinion should be taken to cast doubt on longstanding prohibitions on the
> possession of firearms by felons and the mentally ill, or laws forbidding the
> carrying of firearms in sensitive places such as schools and government buildings,
> or laws imposing conditions and qualifications on the commercial sale of arms.

---

[4] It should be noted that the central purpose of the Second Amendment has been that of self-defense and not simply "personal use," as Plaintiff suggests, *see* Compl. ¶ 10, IX.  *See Bruen*, 142 S.Ct. at 2133 (emphasizing that "individual self-defense is the *central component* of the Second Amendment right") (emphasis in original) (quotation and citation omitted).

*Id.* at 626-27.  Nor is *Heller*'s list of lawfully regulated measures in any way exhaustive.  *Id.* at

627 n.26.  Both *McDonald* and *Bruen* re-emphasized this point.  *See McDonald*, 561 U.S. at 767-

68, 786, 791 (clarifying that the Court's holding that the Fourteenth Amendment's Due Process

Clause incorporates the Second Amendment right to keep and bear arms does not invalidate the

ability of the States to impose firearm licensing schemes); *Bruen*, 142 S. Ct. at 2162

(Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a variety of

gun regulations.") (citation omitted).

In fact, in *Bruen* the Court specifically clarified that it remains constitutionally

permissible for states to subject the possession and carrying of firearms to a licensing

requirement.  The Court explicitly clarified that "nothing" in its decision "should be interpreted

to suggest the unconstitutionality of" firearm licensing regimes which, like Mass. G.L. c. 140,

§ 131, "do not require applicants to show an atypical need for armed self-defense."  142 S. Ct. at

2138 n.9.[5]  Rather, such licensing regimes, "which often require applicants to undergo a

background check or pass a firearms safety course, are designed to ensure only that those bearing

arms in the jurisdiction are, in fact, law-abiding, responsible citizens," and are thus fully

consistent with the Second Amendment.  *Id.*  Likewise, in a concurring opinion in *Bruen*, Justice

Kavanaugh, joined by Chief Justice Roberts, emphasized that the Court's decision "does not

prohibit States from imposing licensing requirements for carrying a handgun for self-defense"

and that firearm licensing regimes that "may require a license applicant to undergo

---

[5] Although Mass. G.L. c. 140, § 131(d), previously included a "good reason" requirement
analogous to the "proper cause" requirement in the New York firearm licensing regime
invalidated in *Bruen*, the Legislature amended § 131 in 2022 to remove that requirement.  *See*
Mass. St. 2022, c. 175, § 7, eff. Aug. 10, 2022.  Therefore, Mass. G.L. c. 140, § 131, now does
not require an applicant to demonstrate any special need to carry a firearm.

fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements" "are constitutionally permissible." *Id.* at 2162 (Kavanaugh, J., concurring).

Lu's argument that an application fee of $100 and requisite background check for obtaining a license to carry also violate the Second Amendment, Compl. ¶¶ I-II, is also without merit under *Bruen* as he does not explain how these requirements infringe on his Second Amendment rights.  142 S. Ct. at 2138 n.9 (hypothesizing that "exorbitant fees [that] deny ordinary citizens their right to public carry" might conceivably support a constitutional challenge to a licensing scheme, but otherwise licensing and associated fees would not); *id.* at 2161-62 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense . . . . [Licensing] regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements . . . . [S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice."); *see also Commonwealth v. Loadholt*, 460 Mass. 723, 725-26 (2011) (unequivocally rejecting the argument that the Second Amendment bars state licensing laws).

Because Lu cannot support his assertion that Mass. G.L. c. 140, § 131 violates his Second Amendment right to keep and bear arms in light of *Bruen* and *Heller*, he has failed to state a claim upon which relief may be granted.  Accordingly, even if this Court were to reach the merits of Lu's claims—which it need not, in light of the argument in Section I, above—this Court should dismiss Lu's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6).

13

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Respectfully submitted,

EXECUTIVE OFFICE OF PUBLIC SAFETY
AND SECURITY (EOPSS); TERRENCE REIDY,
in his official capacity as Secretary of EOPSS;
OFFICE OF THE ATTORNEY GENERAL; and
ANDREA JOY CAMPBELL, in her official
capacity as Attorney General of Massachusetts,

By their attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Angélica L. Durón*
Angélica L. Durón, BBO# 705315
Assistant Attorney General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2367
Angelica.Duron@mass.gov

Dated:  October 31, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed electronical through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to those indicated as non-registered participants on October 31, 2023:

Kang Lu
106 Sewall Ave. # 3
Brookline, MA 02446
libertywithoutlicense@gmail.com


*/s/ Angélica L. Durón*
Angélica L. Durón, BBO# 705315
Assistant Attorney General