# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kang Lu, et al.<br><br>*Plaintiffs,*<br><br>*v.*<br><br>TERRENCE REIDY, in his official capacity as Secretary of the EXECUTIVE OFFICE OF PUBLIC SAFTEY AND SECURITY, and<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts,<br><br>*Defendants.* | Civil Action No. 1:23-cv-12045-AK<br><br>**ACTION**<br><br>**FOR**<br><br>**DECLARATORY JUDGMENT** |

### Plaintiffs' Motions and Supporting Memorandum Opposing Defendants' Motion to Dismiss And For Summary Judgment

I, Christopher J. Colby, Gabriel Kishinevski, Sarah Carey, Kevin Kiley, James J. O'Brien III, Frank Staples, Jason Gerhard, Regina Roy, and R. Susan Woods, each appear in our proper persons as plaintiffs to oppose the defendants' motion to dismiss filed on 10/31/2023, Doc. No. 31. The defendants raise three arguments in their motion to dismiss: *1 - Younger* abstention doctrine, *2 -* Eleventh Amendment sovereign immunity, and *3 -* failure to state a claim.

**FIRSTLY**, the defendants argue, specifically as to the original action brought by Kang Lu, that it should be dismissed under the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). The Court may disregard this argument entirely, because we are not being prosecuted for any crime or offence, and this abstention doctrine does not apply.

**SECONDLY**, the defendants contend, that as non-consenting state agencies, the federal action is barred by the Eleventh Amendment. This is valid, and we agree to dismiss the action against the EOPPS and AGO as state agencies. Thus, we each **MOTION** that the caption of the case may be changed to "Kang Lu, et al. v. Terrence Reidy in his official capacity as Secretary of the Executive Office of Public Safety and Security, and Andrea Joy Campbell in her official capacity as Attorney General of Massachusetts."

However, any attempt to dismiss this action against the individual officials must fail. "The [argument] is the same as made in every case where an official claims to be acting under the authority of the State." State officials do not act in their sovereign or governmental capacity when they are alleged to deprive the people of their rights under color of law. "It is simply an illegal act upon the part of a State official in attempting, by the use of the name of the State, to enforce a legislative enactment [in an unconstitutional manner]. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is, in that case, stripped of his official or representative character, and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." If the question of unconstitutionality be raised in a Federal court, that court, has the right to decide it, to the exclusion of all other courts. See *Ex parte Young*, 209 U.S. 123, 159-160 (1908).

"This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century... that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office*

*for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011). "The *Ex parte Young* doctrine allows suits for declaratory and injunctive relief against government officials in their official capacities -- notwithstanding the sovereign immunity possessed by the government itself." *Vann v. U.S. Dep't of the Interior*, 701 F.3d 927 (D.C. Cir. 2012) Circuit Judge Brett M. Kavanaugh.

**THIRDLY**, the defendants contend that the complaint should be dismissed, "Because Lu cannot support his assertion that Mass. G. L. c. 140, § 131 violates his Second Amendment right to keep and bear arms in light of *Bruen* and *Heller*, he has failed to state a claim upon which relief may be granted." See defendants' memorandum, Doc. No. 31, page 13. This FALSE, and a misleading statement, as such a claim was not made.

The State's statutory scheme[1] for firearms licensing is emphatically constitutional as written, but the defendants have deliberately misled their own officers, employees, and agents to be willfully blind to and recklessly disregard the limits of the law in their application and enforcement. By exceeding these limits, the defendants have infringed upon our individual rights to keep and bear Arms for personal use, as guaranteed by the Second Amendment.

Specifically, the defendants deliberately conceal and willfully ignore the legislated purpose and scope of the license to carry, which is limited to regulating professional conduct in occupations. They hide the fact that the word "carry" means to carry on the powers and duties of public offices, or to carry on a business, and in no way encompasses our right to "bear" Arms. They also willfully ignore and exceed the object of their regulation to infringe on the Arms that

---

[1] "Discussion of the statutory scheme governing licensing of firearms. ... 1. Statutory scheme. ... The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications." *Mirko Chardin v. Boston Police Commissioner*, 465 Mass. 314, 315 (2013).

people keep, which are presumptively protected by "the Second Amendment's 'unqualified command,'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

LICENSE: The power of the State to issue licenses is unquestionably constitutional. The license to carry firearms is an 'entitlement[2],' which the Massachusetts Constitution describes as "distinct from those of the community, [and] arises from the consideration of services rendered to the public." As a "power residing originally in the people, and being derived from them," the license "is instituted for the common good; for the protection, safety, prosperity and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men." See articles 6, 5, and 7 of the Massachusetts Declaration of Rights, respectively.

The State's licensing scheme is compatible with Supreme Court case law as "a licensee to engage in the business specified in the statute ... were appropriate to protect the people in the enjoyment of their relative rights and privileges, and to guard them against fraud and imposition, and is not forbidden by the Fourteenth Amendment." *W. W. Cargill Co. v. Minnesota*, 180 U.S. 452, 453 (1901).

The statutes authorizing the license unequivocally state that the license to carry firearms is a requirement for "professional licensing" in "specified occupations," and subject to "occupational fees ... on a profession." See Allegations I, II, and III on page 5 of the Action, Doc. No. 1, in reference to *803 CMR 2.01*, *G. L. c. 6, § 172B.5*, and *G. L. c. 6, § 172N*, respectively. It is issued by defendant Terrence Reidy in his official capacity as the Secretary of EOPSS, to entitle persons carrying firearms "in a business as a gunsmith," or "to sell, rent or lease firearms,"

---

[2] See *G. L. c. 140, § 131*: "A license shall entitle a holder thereof to... carry ... firearms..."

or "in the performance of their duties" for the public safety and security, as described by *G. L. c. 140, § 122, G. L. c. 147, § 29A, G. L. c. 147, § 29, G. L. c. 147, § 8A,* and *G. L. c. 41, § 98.*

The defendants' claim that "To lawfully possess a gun in Massachusetts, a person generally must obtain ... a license ...," Page 5, Doc. No. 31, is purposefully misleading, because it conceals the professional nature of that occupational requirement, and omits the obvious: There is no such thing as a "license to bear arms."

Indeed, if all people were subject to licensing in order to exercise a right secured by the Constitution, then the flat $100 "occupational fee ...on a profession" imposed by the licensing authority at *G. L. c. 6, § 172N* would be unconstitutional as applied. Not only because it's clearly an "occupational fee," but a flat fee invariably restrains the poor more so than the rich, and "The States, of course, are prohibited by the Equal Protection Clause from discriminating between 'rich' and 'poor' as such in the formulation and application of their laws." *Douglas v. California*, 372 U.S. 353, 361 (1963) and "a State can no more discriminate on account of poverty than on account of religion, race, or color." *Griffin v. Illinois*, 351 U.S. 12, 17-18 (1956).

But the State's licensing schemes were never imposed to impair, license, or tax the rights secured by the Constitution; as "A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution. ... a person cannot be compelled 'to purchase, through a license fee or a license tax, the privilege freely granted by the constitution.'" *Murdock v. Pennsylvania*, 319 U.S. 105, 113, 114 (1943).

In fact, "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials, and to establish them as legal principles to be applied by the courts. One's right to life, liberty,

and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *W.V. Board of Education v. Barnette*, 319 U.S. 624, 638 (1943). And "Where rights secured by the Constitution are involved, there can be no rulemaking or legislation which would abrogate them." *Miranda v. Arizona*, 384 U.S. 436, 491 (1966). To reiterate, there is simply no legislation authorizing a license to bear arms.

    <u>CARRY</u>: The license to carry, no doubt, entitles the holder thereof to carry. However, the defendants have deliberately concealed and obfuscated the meaning of the statutory entitlement to "carry" with our constitutional right to "bear" Arms. The defendants' willful misapplication of the license is calculated to deprive us of our individual right to bear Arms, under the color of licensing requirements on a profession, and backed by the threat of arbitrary enforcement.

    "It is elementary law that every statute is to be read in the light of the constitution." *McCullough v. Virginia*, 172 U.S. 102, 112 (1898) and "every word must have its due force and appropriate meaning, and no word is to be regarded as unnecessarily used or needlessly added." *Williams v. United States*, 289 U.S. 553, 554 (1933). "The Constitution is a written instrument. As such, its meaning does not alter. That which it meant when adopted, it means now." *South Carolina v. United States*, 199 U.S. 437, 448 (1905), and "Words [in the Constitution] must be read with the gloss of the experience of those who framed them. ... and ... would receive the significance of the experience to which they were addressed -- a significance not to be found in the dictionary." *United States v. Rabinowitz*, 339 U.S. 56, 70 (1950). The Constitution is, therefore, not only the supreme Law of the Land, but it's also a dictionary, "and the law is the definition and limitation of power." *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

Since "[the Legislature] cannot invoke the sovereignty of the people to override their will as declared in the Constitution," *Perry v. United States*, 294 U.S. 330, 331 (1935), and "[the Legislature] cannot [redefine the terms in the Constitution], from which alone it derives its power to legislate," *Eisner v. Macomber*, 252 U.S. 189, 206 (1920), the words: to keep and bear arms, life, liberty, private property, house, personal effects ...etc., speak to those rights and properties, which are beyond "the constitutional power of the legislature to reach," *McCullough v. Virginia, supra, id* at 112.

Read in the light of the Massachusetts and the United States constitutions, the word "carry" may mean a power, an obligation, or a duty of government:

> U.S. Constitution, Article I, Section 8, Clause 18: "Congress shall have Power To ... make all Laws ... for ***carrying into Execution the foregoing Powers***..." Massachusetts Constitution, Articles of Amendment, Article XLVI, Section 2 (amended by Article CIII): "... appropriations may be made ..., ***to carry out legal obligations***...;" Article XLVIII, II., Section 2: "... the general court ... shall appropriate such money ... ***to carry such law into effect***;" Article LXXXIII: "public offices ... ***carrying on the powers and duties*** ..." and NOTE: "... for ***carrying the new Constitution into effect*** ..." and "... a law to ascertain and ***carry out the will of the people*** ..." Emphasis added.

Additionally, the courts have held that "When the meaning of a statute is brought into question, a court properly should read other sections and should construe them together" *Commonwealth v. Murphy*, 409 Mass. 665, 668 (1991); "Beyond plain language, '[c]ourts must look to the statutory scheme as a whole, '... so as 'to produce an internal consistency' within the statute... Even clear statutory language is not read in isolation. [Internal citation omitted.]" *Plymouth Retirement Board v. Contributory Retirement Appeals Board & Another*, 483 Mass. 600, 606, (2019); "our rule of construction [is] that words in a statute must be considered in light of the other words surrounding them." *Commonwealth v. Brooks*, 366 Mass. 423, 429 (1974); as

"Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers Inc. v. United States*, 286 U.S. 427, 433 (1932). The General Laws provide the following guidance:

> "To carry" may mean to **carry on the duties and functions of public offices**, *G. L. c. 21A, § 2, c. 151B, § 3, c. 6, § 186*, etc... *passium*; to **carry on a business**, *G. L. c. 140, § 76, c. 156B, § 15, c. 109, § 6*, etc... *passium*; the **"Powers and duties"** of officers to "carry" weapons *G. L. c. 41, § 98* and *G. L. c. 140, § 131P*;  to carry weapons by sheriffs, his deputies, and other officers **"performance of their duties"** *G. L. c. 147, § 8A*; "to carry" firearms "in the **performance of their duties"** *G. L. c. 147, § 29* and *§ 29A* by watchmen, guards, patrolmen, private detectives or investigators to "protect persons or property, ...**for hire or reward"** *G. L. c. 147, § 22*. Notably, a police cadet "shall not carry arms," as an employee *G. L. c. 147, § 21A*; but nothing bars him from "bearing" arms for personal use.

> Additionally, "carry" may mean the entitled activities of carriers engaged in business *G. L. c. 266, § 38* or a duty *G. L. c. 159, § 1*, or private bus carriers *G. L. c. 161A, § 47*, public and private carriers *G. L. c. 90, § 51M*, motor carriers *G. L. c. 64F, § 2*, contract carriers G. L. c. 159B, § 4, common carriers *G. L. c. 159B, § 8* and *G. L. c. 159, § 12*, interstate carriers *G. L. c. 159B, § 10*, agricultural carriers *G. L. c. 159B, § 15A*, carriers of mail *G. L. c. 161, § 52*, and public air carriers *G. L. c. 90, § 49O*, *to carry or transport "for hire*."

Thus, while a license to carry "shall entitle" the performance of duties and functions of public offices, or to carry on a business, or to carry or transport for hire or reward; it may not infringe on our constitutional right to "bear" Arms. By recklessly ignoring the rules of Statutory Interpretation[3], the defendants have willfully misconstrued and misapplied the licensing scheme in violation of their sworn duty to the "faithful execution of [the laws]; that every man may, at all times, find his security in them." See Preamble to the Massachusetts Constitution.

FIREARM: An important subject matter regulated and enforced by the defendants is "firearms" -- not just any firearm, but firearms and other items "as defined in" *G. L. c. 140, §*

---

[3] Statutory Interpretation: https://crsreports.congress.gov/product/pdf/R/R45153/2

*121*. The unlicensed possession of such items are often punishable by hefty fines and long terms
of imprisonment under *G. L. c. 269, § 10*. For example:

> "Section 10. (a) Whoever, ... knowingly has in his possession ... a firearm ... ***as defined in
> section one hundred and twenty-one of chapter one hundred and forty*** without ..." a license
> shall be punished by a mandatory minimum sentence of 18 months... [Emphasis added.]

Despite the seriousness of misconstruing what *is*, and what *is not* a statutory "firearm,"
the defendants recklessly disregard and willfully violate *G. L. c. 277, § 39* (words and phrases
defined by law shall be used according to their legal meaning), to exceed the limits of their
authority and to reach far beyond the bounds of *G. L. c. 140, § 121* to any firearm, even those
presumptively protected by "the Second Amendment's 'unqualified command,'" *Bruen, supra*,
such as our "arms for personal use" in *G. L. c. 62C, § 55A* and "firearms or ammunition" in *G. L.
c. 131, § 78*, that is necessary for farming and hunting to feed oneself and family.

This Court may judicially notice, that the term "as defined in section 121 of chapter 140"
of the Massachusetts General Laws means any one of the items so defined:

1. Any item "As used in sections 122 to 131Y, inclusive," defined by *G. L. c. 140, § 121*,
2. a firearm in a retail store or a gunsmith's place of business, *G. L. c. 140, § 122*,
3. a firearm carried in the performance of duties, for employment, or for hire, *G. L. c. 6E, §
   1, G. L. c. 41, § 98, G. L. c. 140, § 131P, G. L. c. 147, §§ 8A, § 29, § 29A, § 22*,
4. a stolen firearm, *G. L. c. 266, § 30*,
5. a firearm used in a violent crime or a felony, *G. L. c. 265, §§ 58, § 15E, § 15F, § 18B*,
6. a firearm with a defaced serial number, *G. L. c. 269, §§ 11A, § 11B, § 11C*,
7. a firearm discharged within 500 feet of a dwelling, *G. L. c. 269, § 12E*,
8. a rifle, shotgun, or large capacity weapon carried on any public way, *G. L. c. 269, § 12D*,
9. a firearm prohibited in airport secure areas, *G. L. c. 269, § 12F*,
10. a firearm, rifle, shotgun, machine gun or assault weapon used in a hijacking, disruption of
    school, public building or transportation, *G. L. c. 269, § 14*, or
11. a firearm, the purchase of which with welfare money is prohibited by *G. L. c. 18, § 5I*.

And that is all. An item "as defined in" *G. L. c. 140, § 121* excludes all arms that people
keep and bear. As "It is axiomatic that the statutory definition of the term excludes unstated

meanings of that term." *Meese v. Keene*, 481 U.S. 465 (1987), and "When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914 (2000). As "Thus far, we have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute." *United States v. Great Northern Railway Co.*, 287 U.S. 144 (1932).

Therefore, while defendants should, and must regulate the items "as defined in" *G. L. c. 140, § 121*, they violate the Constitution and injure our rights when exceeding their statutory authority by ignoring basic rules of statutory construction; that is, "If the power is not in terms granted, ...it does not exist. And in ... executing the powers granted, they must be ... consistent with the letter and spirit of the Constitution." *Legal Tender Cases*, 110 U.S. 421, 468 (1884).

**STANDING**: Federal jurisdiction has been properly invoked because the defendants have invaded "a legally protected interest." Their willful concealment and obfuscation of the real purpose and scope of the license to carry firearms, their willful and arbitrary misapplication of legal defined words have made it impossible for us to find security in the laws. They have imposed a chilling effect on the exercise of our legally protected rights, using threats of arrest and prosecution. This constitutes an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." And this injury is likely to be redressed by a judicial decision. See *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

Specifically, I, **Christopher J. Colby**, hold a license issued under *G. L. c. 140, § 131*, which "shall entitle a holder thereof of a license to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, ... for all lawful purposes ..." However, despite this entitlement, *G. L. c. 140, § 131M* imposes a first offense sentencing range of "not

less than one year nor more than ten years" for the possession of "a large capacity feeding device that was not otherwise lawfully possessed on September 13, 1994." And *G. L. c. 269, § 10(c)* imposes "imprisonment in the state prison for life, or for any term of years" for the possession of a machine gun, which is defined to "include bump stocks and trigger cranks," without regard to those lawfully acquired before the statute was enacted. Defendants have refused to distinguish the items they license and regulate, from the "Arms[4]" protected by the Second Amendment, such as my arms for personal use as described in *G. L. c. 62C, § 55A*. This leaving me in constant fear and uncertainly as to whether if any of the arms I may keep could subject me to potentially years of incarceration.

Furthermore, the license I hold will eventually expire; but since the defendants have never differentiated the crime of unlicensed firearm possession from my individual right to keep and bear arms as secured by the Constitution, nothing prevents them from obtaining a warrant to search my house, to prosecute, and to incarcerate me upon the immediate expiration of my license. This constitutes a credible injury that is both concrete and particularized, actual and not conjectural or hypothetical, and likely to be redressed by this Court's declaratory powers.

I, **Gabriel Kishinevski**, join all other plaintiffs for declaratory relief to redress similar injuries caused by the defendants. Specifically, I am an avid antique enthusiast, seeking and obtaining my happiness by acquiring property according to my natural, essential, and unalienable rights. I often come upon opportunities to acquire arms for personal use, military arms, uniforms

---

[4] Arms: "[are] 'weapons of offence, or armour of defence.' ... 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *D.C. v. Heller*, 554 U.S. 570 (2008)

and equipment, which the people have kept since the founding era[5], with so much of their fuel, provisions, furniture, personal effects, utensils for housekeeping, bedding and apparel necessary for upholding life, as described in present day laws, *G. L. c. 62C, § 55A* and *G. L. c. 60, § 24*.

By refusing their assent to these laws, and refusing to distinguish the objects of the their regulation "as defined in" *G. L. c. 140, § 121* from our arms for personal use and military arms, the defendants injure my right to acquire property and threaten my liberties. Because "Blurred signposts to criminality will not suffice to create it," *United States v. CIO*, 335 U.S. 106, 142 (1948), the defendants "violate the Federal and State Constitutions' guarantees of procedural due process when it [may] 'take away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," *Vega v. Commonwealth*, 490 Mass. 226 (2022), quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015). I my action is remedial. Its purpose is to remove and afford relief from uncertainty and insecurity with respect to my rights and duties, by judicially redressing the defendants' failure to give fair notice.

I, **Sarah Carey**, join all other plaintiffs for declaratory relief to redress injuries caused by the defendants. Specifically, I am an owner of land relying on growing vegetables and tending livestock to feed myself and family. *G. L. c. 131, § 37* permits me to kill, hunt or take by other means, except poison, trap, or snare, any wild bird or mammal damaging my property. *G. L. c. 131, § 66* and *§ 67* prohibit certain shotguns, rifles, revolvers and pistols for recreational hunting; but *G. L. c. 131, § 78* makes exceptions to those prohibitions and allows "transporting firearms or ammunition to or from the commonwealth" for the "protection of property."

---

[5] https://archives.lib.state.ma.us/bitstream/handle/2452/104241/1785acts0046.pdf?sequence=3&isAllowed=y

The defendants have refused their Assent to these Laws, the most wholesome and necessary for the common good. They threaten me with arrest and prosecution for the pretended offences of unlicensed firearms possession, using false and arbitrary terms of art to extend an unwarrantable jurisdiction to threaten me and my family. Where the Constitution secures my right to feed my family, and where the plain text of state laws uphold my right to keep Arms, including firearms or ammunition therefor, it is the duty of this Court to so declare.

I, **Kevin Kiley**, join all other plaintiffs for declaratory relief to redress injuries caused by the defendants. Specifically, I was born and raised in Massachusetts, where I plan to travel in order to visit my family during the upcoming holiday season. Where I live in Kansas, my right to keep and bear arms for "Personal and Family Protection[6]" is not subject to a license to carry. However, one may be obtained for purposes of interstate reciprocity and employment through an application process nearly identical to the licensing scheme in Massachusetts, including payment of $100, passing a safety course, submitting to fingerprinting ($32.50) and a background check.

Notably, despite identical licensing requirements and the benefit of reciprocity in at least 36 other states, the Kansas license is not an exemption to prosecution under *G. L. c. 269, § 10* for the unlicensed possession of firearms, except under a very narrow provision in *G. L. c. 140, § 131G* for sporting purposes. Since the rights secured by the Constitution are not limited by state boundaries, it's evident that the purpose of the license to carry is for professional entitlements and the like, under the control of the issuing jurisdiction, see *G. L. c. 6, § 172(a)(3)*.

Whereas I intend to engage in constitutionally protected conduct of bearing arms while traveling, but the defendants have intentionally blurred the distinction between constitutional

---

[6] https://ag.ks.gov/docs/default-source/publications/concealed-carry-brochure.pdf?sfvrsn=5f1d7a68_16

rights and statutory entitlements, they pose a real and credible threat, in which I could be arbitrarily arrested, and deprived of rights under color of law. This injury is both concrete and particularized, actual and not conjectural or hypothetical, and likely to be redressed by this Court's declaratory powers.

I, **James J. O'Brien III**, **Frank Staples**, and **Jason Gerhard**, each join Kevin M. Kiley and all other plaintiffs for declaratory relief to redress similar injuries caused by the defendants, where identical questions of law have arisen. Specifically, we are each New Hampshirites who wish to keep and bear arms during our frequent travels into Massachusetts. As this Court has the power to remove and afford relief from uncertainty and insecurity with respect to our rights and duties under the law, we each seek a declaratory determination for the meaning of the word "carry" as entitled by the license to carry, to be distinguished from our right to "bear" Arms secured by the Second Amendment.

I, **Regina Roy**, join all other plaintiffs for declaratory relief to redress injuries caused by the defendants. Specifically, I am an older, disabled woman receiving disability assistance, which barely covers my expenses. Consequently, I can only afford to live on Main Street in Holyoke, where drug and gang-related violent crime rages rampant and unabated. As things stand, I live in constant fear for my safety -- even in my own house. The expenses associated with applying for a license to carry, including the application fee ($100), fingerprinting ($20-40), and a basic firearms safety certification class, together with the necessary ammunition and supplies ($100-200) are simply cost-prohibitive, and excludes me from obtaining a license to carry.

The defendants injure my rights as secured by the Constitution by deliberately concealing from me that the $100 application fee is an occupational fee or a licensing requirement on a

profession, see *G. L. c. 6, § 172N*, and by threatening me with arrest and prosecution were I to exercise my right to bear arms for personal use without their license. These injuries are made more severe, because the "State's failure to protect [me] against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago*, 489 U.S. 189, 197 (1989). The Court must redress these constant and immediate threats to my life, liberty, and happiness; especially because "when the State, by the affirmative exercise of its power, so restrains [my] liberty that it renders [me] unable to care for [or defend myself], and at the same time fails to provide for [my] basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, *supra* at 200.

I, **R. Susan Woods**, join all other plaintiffs for declaratory relief to redress injuries caused by the defendants. Specifically, I am a single, unhoused woman, often finding myself in vulnerable and risky situations while living and sleeping in a tent. Also, my work as a beekeeper regularly brings me into close contact with dangerous wildlife, including countless bears, wild boars, raccoons, snakes, bobcats, and at least two mountain lions in just the last few years. Once, I watched helplessly, as a raccoon attacked and killed my chickens, depriving me of sustenance, and causing economic loss. I could have easily prevented this, had I been properly armed.

In addition to my present inability to afford the expenses of licensing, which is easily in the $200-300 range, I have no fixed residence or place of business, as required by the application for a license to carry[7], and by *G. L. c. 140, § 131(d)*. Since the rights secured by the Second Amendment are not exclusive to those who can afford a house, it's evident that the defendants

---

[7] https://www.mass.gov/how-to/apply-for-a-firearms-license

have deliberately concealed the professional nature of the license; and they have used it under color of law to deprive my rights secured by the Constitution.

The defendants have inverted the principal-agency relationship inherent in our established form of government, transforming the State's regulatory instruments -- instituted for my benefit and safety -- into tools of control and profit for themselves, threatening me with the very power that was derived from me, see Article 5 Massachusetts Declaration of Rights. These injuries and deprivations are absolutely intolerable and are an immediate threat to my life, liberty, and happiness, which must be redressed by this Court.

I, **Kang Lu**, appear in my proper person, and join all other plaintiffs for declaratory relief to redress injuries caused by the defendants. The defendants claim that my action "is merely a collateral attack on [my] recent firearm-related convictions in state court, ... and can be dismissed under the doctrine announced in *Younger v. Harris*, ... [his] suit directly challenges the Massachusetts licensing laws ... under which he was convicted, Mass. G. L. c. 269, § 10, for carrying a firearm without a license ...," see defendants' memorandum, page 6, Doc. No. 31.

Again, my action does not challenge "the Massachusetts licensing laws." On the contrary, it aims to affirm the constitutionality of these statutes as written, and for declaratory guidance on their proper application and enforcement. Even if there is an ongoing appeal for an alleged conviction for "carrying a firearm without a license," the defendants fail to mention that I was also acquitted on a separate charge for the unlicensed possession of a large capacity weapon or large capacity feeding device, *G. L. c. 269, § 10(m)*[8]. Thus, even if the *Younger* abstention

---

[8] Commonwealth v. Kang Lu, 2179 CR 67, Hampden Superior Court

doctrine may bar a challenge to *G. L. c. 269, § 10(a)*, the subject matter legislated and enforced by *§ 10(m)* remains subject to this Court's judicial review.

 In Massachusetts, a firearm "as defined in" *G. L. c. 140, § 121* is a handgun with a barrel less than 16-inches, which is subject to different legal and licensing requirements than long-guns, such as a rifle with a barrel more than 16-inches. The carrying of firearms (handguns) is subject to a license to carry issued under *G. L. c. 140, § 131*; whereas, statutory rifles (long-guns) are subject to the firearm identification card, "FID card," issued under *G. L. c. 140, §129B*. Thus, a firearm identification card cannot be used to legally have a firearm. This nomenclature is not only confusing to the ordinary citizen, but it also materially distinguishes *§ 10(a)* "carrying a firearm without a license" from *§ 10(m)* "unlicensed possession of a large capacity weapon[9]." Essential to this case, is that an ongoing state proceeding for a handgun license violation does not impair the vitality of a separate action for a long-gun licensing controversy in which no criminal proceeding is now pending. See *Steffel v. Thompson*, 415 U.S. 452, 453 (1974).

 Additionally, *§ 10(a)* is not the only statute under which a controversy may arise under chapter 269 section 10. For example, *§ 10(b)* criminalizes the carrying of double-edged knives, switch-blades, blowguns, sling-shots, clubs, etc... on one's person; and whereas I intend to engage in such conduct presumptively covered by the Second Amendment's plain text, this Court has jurisdiction to hear this case. Specifically, the defendants continue to injure me with threats of arrest and incarceration for the pretended offences of bearing arms for personal use, including a rifle, a shotgun, a double-edged knife, a sling-shot, or "any thing" that I wish to wear for my defence, *D.C. v. Heller*, 554 U.S. 570 (2008), or with which to hunt and to feed myself.

---

[9] G. L. c. 140, § 121: "Weapon", any rifle, shotgun or firearm.

**WHEREFORE**, We the People, the undesigned plaintiffs, each move this Honorable Court to **DENY** defendants' motion to dismiss, and **ORDER** them to answer to discovery, or to make an Advisory Ruling in accordance with *G. L. c. 30A, § 8* substantially addressing the plaintiffs' allegations I through IX in the original action, Doc. No. 1.

Additionally, where the defendants have failed to deny plaintiffs' allegations by filing a responsive pleading, they are admitted in accordance with *Rule 8(b)(6)*; and since there is no genuine dispute as to any material fact, the plaintiffs are entitled to **SUMMARY JUDGMENT** as a matter of law in accordance with *Rule 56* on the allegations as follows:

Allegations I - III: the license to carry firearms is a professional license that entitles the holder thereof to purchase, rent, lease, borrow, possess and carry firearms in specified occupations, subject to an occupational fee and licensing requirements on a profession, in accordance with *G. L. c. 140, § 131, 803 CMR 2.01, G. L. c. 6, § 172, § 172B.5*, and *§ 172N*.

Allegation IV: defendant Terrence Reidy in his official capacity as the Secretary of EOPSS is vested with the power to license and regulate officers, security guards, employees, private investigators, firearms retailers, gunsmiths, and the like, whose profession or occupation requires him to possess or carry firearms. There is no legislation authoring him to implement, administer, or enforce a license upon the right of the people to keep and bear Arms.

Allegation V: defendant Andrea Joy Campbell in her official capacity as Massachusetts Attorney General is vested with the power to prosecute licensing crimes; but, unless defendant Terrence Reidy or a licensing authority institutes or recommends institution of proceedings in a court pursuant to *G. L. c. 30A, § 1(1)*, defendant Campbell may not assign the enforcement

powers of an executive branch agency to the judicial branch in violation of the state's administrative procedure act and the separation of powers doctrine.

Allegation VI: defendant Campbell's failure to make EOPSS a party or preventing it from being heard in the prosecution of a regulatory offense involving a license granted by the agency violates *G. L. c. 231A, § 8,* and deprives the trial court of competent subject matter jurisdiction.

Allegation VII: in Massachusetts statutory law, the word "carry" may mean to carry on the duties, functions, and powers of public offices, to carry on a business, or to carry for hire or reward. Its statutory meaning shall exclude "bear" as contemplated by the Second Amendment.

Allegation VIII: firearms and items as defined in *G. L. c. 140, § 121* excludes the Arms that people keep and bear as secured by the Second Amendment, including firearms or ammunition for the protection of property, arms for personal use, military arms and equipment described in *G. L. c. 131, § 78, G. L. c. 62C, § 55A,* and *G. L. c. 60, § 24.*

Allegation IX: the individual right of the people to keep and bear Arms is not a right granted by the Constitution, and it's not in any manner dependent upon that instrument, or the license to carry firearms for its existence.

Dated: *November 13*, 2023.                                  Very Respectfully Signed by Plaintiffs,

*Kevin Michael Kiley*

## Certificate of Service and Unsworn Declarations Under Penalty of Perjury

I certify that the forgoing was sent to the Clerk of the Court, Suite 2300, at One Courthouse Way, Boston, MA 02210, and a copy of the same, was also sent to the defendants' counsel by emailing AAG Angélica L. Durón at angelica.duron@state.ma.us and/or angelica.duron@mass.gov.

I further certify under penalty of perjury, under the laws of the United States of America that the facts specified in the memorandum in support of summary judgment are true and correct, that they were made on personal knowledge, would be admissible in evidence, and that I am competent to testify on the matters so stated in accordance with *Rule 56(c)(4)* and *28 U.S. Code 1746(1)*, without the United States.

Executed on ___November 13___, 2023.

Kang Lu, *in propria persona*
106 Sewall Ave, Apt # 3
Brookline, Massachusetts
libertywithoutlicense@gmail.com
Phone: 413-300-2102

Kevin Michael Kiley, *in propria persona*
712 E. 1st Ave. # 6
St. John, Republic of Kansas
kevinmkiley1969@gmail.com
Phone: 620-617-5697

Gabriel Kishinevski, in propria persona
26 East Street,
Hadley, Massachusetts
gabe.kishinevski@hotmail.com
Phone: 413-320-6214

Sarah Carey, in propria persona
26 East Street,
Hadley, Massachusetts
sarahpip@yahoo.com
Phone: 413-204-3504

Regina Roy, in propria persona
911 Main Street
Holyoke, Massachusetts
radiance369@protonmail.com
Phone: 808-385-1379

Christopher J. Colby, in propria persona
118 Maple Street
Easthampton, Massachusetts [01020]
ccchris.co.cc@gmail.com
Phone: 413-237-5591

Frank Staples, *in propria persona*
332 Merrimack Street
Manchester New Hampshire [03103]
absolutedefiance@protonmail.com
Phone: 603-722-5408

James J. O'Brien III, *in propria persona*
1 Hardy Road Suite 355
Bedford New Hampshire [03110]
scholartaoist@protonmail.com
Phone: 781-718-3151

I further certify under penalty of perjury, that the facts specified in the memorandum in support of summary judgment are true and correct, that they were made on personal knowledge, would be admissible in evidence, and that I am competent to testify on the matters so stated in accordance with *Rule 56(c)(4)* and *28 U.S. Code 1746(2)*, within the United States.

Executed on ___November 13___, 2023.

R. Susan Woods, *in propria persona*
P.O. Box 160,
Hadley, MA 01035
rsusanwoods@gmail.com
Phone: 413-883-1414

Jason Gerhard, *in propria persona*
107 North Main Street
Concord, NH 03301
jason.gerhard@leg.state.nh.us
Phone: 603-271-3661